MONROE, J.
Tbe administrator of tbis succession appeals- from a judgment ordering the amendment of his final account, and complains that the judge a quo erred in increasing ' the amount allowed Mrs. M. O. Leroy from $5 to $20, and in allowing Mrs. Langlumé, represented by her husband, George Langlumé, more than she is entitled to.
Mrs. Leroy presented a bill to the administrator for $15 for washing the corpse of the deceased and preparing it for burial. She was placed on the account for $5, whereupon she filed an opposition claiming $60, whereof $45 is for nursing. It is shown that the usual charge for washing a corpse is $5, and that the charge for nursing .was an afterthought. The judgment appealed from must therefore be amended as to this item.
Mrs. Langlumé presented a bill for $1,675, which the administrator, through his attorney, refused to recognize. Her husband then brought suit against' the succession, in which he alleged that his wife had nursed Miss Alexander for 11 months prior to her death, and that her services, at $5 per day, were worth the amount charged. By supplemental petition, filed by consent in lieu of the original, the petitioner alleged that Mrs. Langlumé “did not act in a menial capacity, or as a domestic, on the premises of the deceased, but that the latter came, or had herself transported, to the petitioner’s premises, where she was attended to, not by the day, month, or year, but to be taken care of through her whole illness, during which time she lived with defendant [petitioner]; that Mrs. Langlumé [petitioner’s wife] attended to the purchase of all necessaries, and, under physicians’ directions, administered the same; furnished -to her food and beverage, which she had to administer herself, as the patient was perfectly helpless and paralyzed; that all victuals were furnished to her by the petitioner; that petitioner had to do all the washing of her clothes and sheets, as washerwomen declined doing the same. Wherefore petitioner prays * * * as in the original ■ p etition.’ ’
The administrator pleaded the prescription of one year, which being sustained, it was held that so much of the claim as related to services rendered prior to February 8, 1901, was barred. The administrator then answered, alleging that, if any services were rendered, they were not worth over $40 per *1030 month; that Mrs. Langlumé received $315 for such services up to September, 1900, and that she collected rents for account of Miss Alexander, at the rate of $42.50 per month, from June 1, 1899, to May 1, 1900, and has retained the furniture and other effects left by her at her death. And he prayed judgment in reeonvention therefor.
Thereafter the administrator filed his account, and Langlumé opposed the same, claiming $1,675 for nursing done by his wife, and the additional sum of $1,100 (being at the rate of $100 a month for 11 months) for board, lodging, washing, etc. This latter claim has, however, been abandoned, and the opponent stands on the claim as asserted in the petition originally filed, which has been’ tried as an opposition to the account.
It appears from the evidence that Miss Alexander was living in a house owned by her on Rampart street, in this city; that Mrs. Langlumé rented two rooms therein, which she occupied with her children; and that she’furnished meals to the owner, for which she charged 25 cents a day. It further appears that in February, 1900, Miss Alexander was badly burned about the throat, arms, and hands, and that Mrs. Langlumé thereafter waited on and nursed her; that some three months later (probably about June 1st) Mrs. Langlumé rented and moved into a house on Baronne street, and that Miss Alexander went with her, there being an agreement that she was to be charged $15 a month for her board, but no agreement, so far as the evidence shows, with regard to nursing and attendance. In September, 1900, however (probably the 4th), Mrs. Langlumé was paid $315 as in full for nursing and attendance up to that date, or, say, at the rate •of $45 per month for seven months. Miss Alexander’s condition did not thereafter improve. On the contrary, it continued to get worse, until on June 12, 1901, she died. In the meanwhile she required more attention, which was given her most patiently and faithfully, and this was particularly the case ■during the last four or five months of her illness, when Mrs. Langlumé was called upon in the night as well as in the day. Under these circumstances we are of opinion that the opponent should be allowed the amount claimed — i. e., $5 a day — from February 8 to June 12, 1901. As for the claim for services, etc., for the period prior to February 8th, the plea of prescription was properly sustained. Civ. Code, art. 3534; Vaughn & Husband v. Terrell & Wade, 23 La. Ann. 62. The evidence satisfies us that Miss Alexander gave the piano, which has been inventoried as belonging to her succession, to Mrs. Langlumé, and that the latter has sufficiently accounted for any rents that she may have collected. Her claim to any other personal effects left by the deceased is not insisted upon. The judge a quo having allowed the opponent compensation at the rate of $200 a month from and after February 8, 1901, his judgment must be amended in that respect.
It is therefore ordered, adjudged, and decreed that the judgment appealed from be amended by rejecting the demand of the opponent Mrs. M. O. Leroy, and dismissing her opposition, at her cost, and by reducing the amount allowed the opponent George Langlumé from $833.33 to $625, and, as amended, affirmed; the appellees named to pay the cost of the appeal.