(83 South. 208)

No. 21907.

Succession of FELLON.

(June 2,' 1919. On Rehearing, Nov. 3, 1919.)

*(Syllabus by the Court.)*

1. WILLS ⚖⇒714—LEGACY AS COMPENSATION FOR SERVICES.

Where a man, upon the eve of leaving a place where he has resided to· go to an infirmary in a neighboring city, with the expressed expectation of there dying, makes a last will containing legacies to persons whom he is leaving behind, and with whom, for many years, he has maintained the most intimate and friendly relations, such legacies cannot be regarded as intended to compensate such persons for board, lodging, and nursing furnished and performed after the testator returned from the infirmary and was thus provided for during a period of more' than 14 months that he survived.

On Rehearing.

*(Additional Syllabus by Editorial Staff.)*

2. LIMITATION OF ACTIONS ⚖⇒21(1, 3)—PRESCRIPTION; CLAIM FOR BOARD AND LODGING AND NURSING.

Under Civ. Code, art. 3534, claims against an executor for lodging and board furnished testator are not allowable beyond the monthly rate for one year; and a claim for nursing is not allowable against the executor for more than one year.

Appeal from Twenty-Ninth Judicial District Court, Parish of 'St. Bernard; E. Emmet Hingle, Judge.

Opposition by Manuel Oscar Buras and another to the final account filed by Ernest Albin Fellon, as dative testamentary executor of Ernest Fellon, deceased. Oppositions maintained, and the dative testamentary executor appeals. Amended by reducing amounts allowed to opponents, and as amended, affirmed.

Oliver S. Livaudais and Frank W. Hart, both of New Orleans, for appellant.

Edwin C. Kohn, of Pointe a la Hoche, for appellees.

Statement of the Case.

MONROE, C. J. The dative testamentary executor of the decedent has appealed from a judgment maintaining the oppositions to his account, of Manuel Oscar Buras, claiming $440 for board and lodging furnished decedent during the last 14 months and 20 days of his life, and of Mrs. Josephine Adele Buras, wife of Eugene De Armas, for nursing the decedent during the same period.

The following facts are established beyond controversy, to wit: Some 18 or 20 years prior to 1914, the decedent established himself at the village, or hamlet, of Venice, in the parish of Plaquemines, and, being unmarried and employed as the teacher of the public school, he occupied a room in the schoolhouse, which was built on land owned by the opponent, Manuel Oscar Buras, with money contributed by the citizens, including Buras and also the decedent, and was boarded in the house of Buras, which was about an arpent distant from the schoolhouse. During the greater part of the period mentioned, he paid for his board the sum of $5 per month, and he, now and then, wrote letters for Buras, and some attempt was made to show that he kept the latter's books for him; but we are satisfied that Buras had few letters to be written and no books. to be kept, and that the price which he charged decedent for his board was very low. We do not, therefore, find it surprising that it was raised after, say, 15 or 16 years, to $15 per month. The family of the opponent, residing in his house, consisted of his ·wife, one son, about grown, his daughter, Mrs. De Armas, and her husband, and, as decedent had no family connections in the parish, his relations with them became exceedingly friendly, so that when, a short time prior to January 1, 1914, he was taken sick, they, and particularly Mrs. De Armas, nursed and took care of him in his room, until, upon the recommendation of his physician, he was removed, in the

latter part of January, to the Touro Infirmary, in New Orleans. In anticipation of that event, and thinking that he was destined to die in the institution to which he was thus consigned, he made his last will, inclosed the same in a sealed envelope, and, without informing her of the contents, turned the envelope, together with the major part of his worldly effects, consisting of certificates of stock in homestead associations, etc., over to Mrs. De Armas. While in the infirmary he was visited by his sister, Mrs. Solis (one of the universal legatees), who gives the following (with other) testimony concerning the state of mind in which he made his will and went to the infirmary, to wit:

"Q. Did he ever tell you that he had arranged his affairs? A. Yes, sir. Q. What did he tell you? A. He told me that, as he felt very sick, and thought he was going to die, he made his will before leaving Venice to go to the Touro Infirmary. * * * "

He remained in the infirmary until the latter part of February, when he telephoned to Mrs. De Armas (who appears to have had business and quarters in the city) that he wanted to return to Venice, and he was accordingly brought back to his room in the schoolhouse. His condition, however, soon became much worse; and, at his request, Mrs. De Armas obtained the consent of her father that he should be removed to the latter's residence, with the understanding that he was to pay $30 per month for board and lodging, and was to pay Mrs. De Armas for her services in nursing him; and he was moved to the Buras residence on March 1, 1914, and there remained, and was nursed day and night, until May 20, 1915, when he died. To the suggestions of his physician that he return to the infirmary, his reply was:

"Why should I? I am miserable away from here. I want to stay here. I have a devoted, kind nurse, and I secure kinder attention here than I would in New Orleans, and I don't want to go."

Some idea of the character of the nursing required by the decedent may be conceived from the following testimony given by the attending physician:

"Q. Do you know whether or not any one had to be in constant attendance upon him? A. Yes, sir; constantly. Q. What was the nature of her" (the nurse's) "duties? A. Well, the man had heart trouble; he had more or less accumulation of fluid in the lungs, in the abdominal cavity. He had heart attacks, when instant treatment had to be administered to him to tide him over those attacks. He had insomnia, when sedatives had to be administered. When his dropsy became far advanced, purgatives had to be administered to him. The man was a heavy built man. He was helpless. Part of the time, he really had to be handled. He had to be nursed carefully. It was with very careful nursing that he lasted as long as he did. Q. Was the nature of that nursing in any way disagreeable? A. Extremely. Q. In what way? A. Well, in that, as I said purgatives had to be administered to him for long periods at a time. The man had to be bathed, his clothing had to be changed; he had to be sponged off; he called for attention night and day."

Decedent's will was presented for probate soon after his death, and it was found that, after leaving $500 to Mrs. Buras (wife of the opponent) and a like amount to Mrs. De Armas, he had bequeathed the balance of his estate, share and share alike, to his sister, Mrs. Solis, and his brother, "Clement L. Fellon, or his heirs" (the heirs being the ones who claim the inheritance). Ernest Albin Fellon, a nephew, was appointed executor and caused an inventory to be made showing total assets appraised at $7,292.87.

## Opinion.

[1] It does not appear to us, surprising, in view of the relations which, for 18 or 20 years, had subsisted between decedent and the Buras family, on the one hand, and between decedent and his relations, on the other hand, that in January, 1914, when he was leav-

ing the parish of Plaquemines, as he thought for the last time, with the expectation of dying in the infirmary to which he was going, he should, in making his last will, have bequeathed to Mrs. Buras and Mrs. De Armas, each, the sum of $500, since it is abundantly shown that he had met with nothing but kindness and good treatment at their hands, better, as he himself felt, than he could have found anywhere else. But, as the will was written on January 22, 1914, and the board, lodging, and nursing, for which compensation is here claimed, began on March 1, 1914, and ended on May 20, 1915, it is not easy to understand what is meant by the following sentence in the brief filed by the counsel for the executor, to wit:

"There is nothing in the evidence produced by the opponents which would go to show that the legacy of $500.00 to Mrs. Eugene de Armas was not made as a reward for the services rendered to the deceased during his last illness, and that the legacy of $500.00 left to the wife of Manuel Oscar Buras, was not made as compensation for board and lodging."

In view of the facts that we are unable to find any plea of prescription in the record and that the judgment appealed from is silent upon that subject, we fail to discover the application of the learned counsel's reference to the "exception of prescription to all claims for more than twelve months"; and we are not disposed to supply the missing plea, even were it competent for us to do so.

For the reasons thus assigned, the judgment appealed from is affirmed.

### On Rehearing.

SOMMERVILLE, J. [2] The plea of prescription of one year filed by the executor to the claims of opponents for nursing, and board and lodging, was overlooked by the court in disposing of the case on the original hearing. The plea was filed in this court,

and was not before the district court. It must be sustained in part, and the judgment appealed from will be amended. Article 3534, C. C., provides that claims of innkeepers and such others on account of lodging and board which they furnish shall be prescribed in one year. Therefore the claim of Manuel O. Buras, for board and lodging at $30 per month, will be reduced to $360.

It does not appear in this case that there was any contract providing for payment at the death of the decedent. The contract was for $30 per month.

The claim of Mrs. Eugene de Armas, for nursing, at $40 per month, will be reduced to $480. "The action to recover the wages of a person employed as a nurse is prescribed by one year." Vaughn v. Terrell, 23 La. Ann. 62; Succ. of Alexander, 110 La. 1027, 35 South, 273.

It is therefore ordered, adjudged and decreed that the judgment appealed from be amended by reducing the amount in favor of Manuel O. Buras from $440 to $360, with interest from judicial demand; and that it be further amended by reducing the judgment in favor of Mrs. Eugene de Armas from $596.66 to $480, with interest from judicial demand; costs of appeal to be paid by opponents. As thus amended, the judgment appealed from is affirmed.