(88 South. 391)

No. 23152.

## Succession of BURGANT.

(April 4, 1921. Rehearing Denied May 2, 1921.)

*(Syllabus by Editorial Staff.)*

1. **Executors and administrators ☞221(5)— Succession; evidence held not to establish contract to remunerate nephew for collecting rents.**

Evidence that a nephew of decedent who was engaged in business had collected her rents for her without charging any commission, and that he had not been promised any compensation for such services, though he testified decedent had told him she would do the right thing by him in her will, *held* not to establish a contract by decedent to pay for those services, but to show that they were gratuitously rendered.

2. **Executors and administrators ☞221(5)— Succession; evidence held to sustain allowance to niece for nursing.**

Evidence *held* to sustain an allowance to a niece of decedent for services in nursing the decedent which were very onerous and very helpful to deceased, though there was no evidence of promise by deceased to the niece to pay for such services; but such allowance must be reduced to services rendered during one year prior to the death where the heirs filed a plea of prescription.

Appeal from Civil District Court, Parish of Orleans; Fred D. King, Judge.

In the matter of the succession of Mrs. Marie Burgant, widow by first marriage of Jean Chantagne and widow by second marriage of Remy Batmale. From a judgment sustaining one item of the administrator's account and rejecting another, both of which had been opposed, the administrator and the heirs both appeal. Judgment amended, by reducing the item allowed.

Andre Lafargue, of New Orleans (E. J. Meral, of New Orleans, of counsel), for appellant heirs.

Emile Pomes, of New Orleans, for appellees.

SOMMERVILLE, J. These appeals were taken from a judgment sustaining one item on the administrator's account and rejecting another, both of which had been opposed.

The administrator placed himself upon the account "for services rendered to the deceased at $12 per month for 20 years, $2,592." This was rejected by the lower court.

[1] The only evidence in support of the claim is given by Joseph Fourcade himself, who is the administrator. He testified that his aunt, the deceased Mrs. Batmale, was old and infirm during the last 18 or 20 years of her life, and that he attended to the collection of her rents and to her property generally, which consisted of four pieces of real estate, yielding a rental of $170 per month. He says that during all of this time he was not paid any commission by his aunt for his services; but that she always promised that when she made her will (which she did not make) she would do what was right toward "us" (meaning one of his brothers and his sister). Again he testified:

"She came and asked me if I wanted to take charge, she was too old and could not attend to it any more; that I wouldn't lose anything by it. Q. Was there anything further said about it? A. Nothing in particular, outside of saying, 'you know I will always do what is right to you in my will.' That is the only thing she ever told me."

When asked: "Why didn't you deduct your commissions then (at the time of the collection of the rents)?" he answered: "She was such a funny woman, your honor, that I didn't want to do it."

There is no evidence whatever of any contract between the deceased and the administrator as to the payment of any salary or commission for collecting rents, etc., to be paid during the lifetime of Mrs. Batmale or after her death. The witness does not claim that she said that she would remunerate him in her will.

The claim is evidently an afterthought;

and was not made during the lifetime of the deceased; and we do not think that the witness contemplated making any charge for the small services which he rendered to his aunt in her old age when she was not able to act for herself. He was a man of business, with property in his own name, to which he attended; the services rendered were of small moment to him. They were undoubtedly rendered because of the relation existing between them, and not because of any reward sought by him or promised by her. The trial judge, who saw and heard the witnesses, was correct in striking the item from the account of the administrator.

[2] With reference to the claim of Miss Lucia Fourcade, the niece of the deceased, for nursing, services, etc., it has more merit; and she too rendered these services without any contract, and without any stipulation on the part of the deceased that she would reward her, the niece, in her will, or in any other manner. Miss Fourcade testified positively when asked: "Under what conditions did you go to live with your aunt?" that there was "no condition." When pressed by her counsel, she said:

"She said that she would not give me anything now, but later on would recompense me. Q. When was she to recompense you? A. When she died, of course."

But the witness does not state that the deceased had stipulated that she would recompense her in her will when she died.

Albert, the brother of Miss Fourcade, did not agree with his sister, for he said that:

"The condition was she was to go there as servant and she would compensate her (his sister) in her will."

And he further says that his aunt said to him:

"Your sister certainly has been good to me, and I will certainly compensate her in my will."

The witness Joseph Fourcade again testified:

"She always promised when she made her will she would do what was right towards us. Q. When you say 'us,' who do you mean? A. Me, my brother and sister. Q. Did she ever do anything about the services rendered by your sister? A. Yes, very often, she would say about it. Q. What did she mention in connection with them? A. She intended to give her a little more than the others. Q. For the services she was rendering to her? A. Yes, sir. Q. Was any of that conversation in the presence of your sister? A. Well, that I can't remember."

Whatever may have been said to the witness Albert Fourcade by his aunt does not appear to have been said to Miss Lucia Fourcade, who did not testify to any promise made by her aunt to remember her in her will. On the contrary, she said that there were no conditions of her employment, and that no stipulations as to wages were made at all.

Nevertheless, the duties performed by Miss Fourcade were very onerous and very helpful to the deceased, and the small claim, $30 per month, is most reasonable; and will be allowed for one year prior to the death of the deceased. The other heirs filed a plea of prescription of one year to the claim. Succession of Fellon, 145 La. 967, 83 South. 208.

It is therefore ordered, adjudged, and decreed, that the judgment appealed from be amended by reducing the item due Miss Lucia Fourcade from $6,480 to $360, costs to be paid by the succession.

O'NIELL, J., concurs in the decree.

DAWKINS, J., takes no part.